# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-1913V

```
* * * * * * * * * * * * * * * * * * * * * * * *    *
                                                   *
                                                   *
REVA SIMS,                                         *
                                                   *    Special Master Katherine E. Oler
                     Petitioner,                   *
                                                   *
                                                   *    Filed: October 25, 2019
v.                                                 *
                                                   *
                                                   *
SECRETARY OF HEALTH AND                            *    Final Attorneys' Fees and Costs;
HUMAN SERVICES,                                    *    Reasonable Basis; Influenza; Brachial
                                                   *    Neuritis
                     Respondent.                   *
                                                   *
* * * * * * * * * * * * * * * * * * * * * * * *    *
```

*William E. Cochran, Jr.*, Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN,
   for Petitioner.
*Heather L. Pearlman*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On December 8, 2017, Reva Sims ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program")[2] alleging that she suffered brachial neuritis/plexitis, or alternatively, a shoulder injury related to vaccine administration (SIRVA), as a result of the influenza vaccine she received on October 8, 2015. Pet. at 1, ECF No. 1.  On March 20, 2019, Petitioner moved to dismiss the petition (ECF No. 25) and I issued a decision dismissing the petition for insufficient proof on March 25, 2019 (ECF No. 26).

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet**.  As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).  If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access.  Otherwise, the Decision in its present form will be available.  *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

On May 9, 2019, Petitioner filed a motion seeking attorneys' fees and costs incurred leading up to and during the pendency of the matter. Fees App., ECF No. 30. Respondent filed his response in opposition to Petitioner's motion on May 23, 2019 stating that Petitioner has failed to establish a reasonable basis for filing the petition. Fees Resp., ECF No. 31. On May 30, 2019, Petitioner replied. Fees Reply, ECF No. 33.

For the reasons set forth below, Petitioner's motion is **GRANTED IN FULL**.

## I.     Petitioner's Relevant Medical History

Petitioner received a flu vaccination in her left deltoid at Rosauers Pharmacy in Spokane, Washington on October 8, 2015. Ex. 2 at 9; Pet. at 1.

Following her vaccination, Petitioner "began to contemporaneously document some of [her] symptoms in [her] calendar." Pet'r's Aff., Ex. 1 at 1. The first notation appears on Saturday, October 10, 2015, in which Petitioner wrote: "Right shoulder tender - burning sharp pains - thought I had slept wrong." Ex. 7 at 1. When her symptoms persisted, she went to see Dr. Clancy Cone, her primary care provider ("PCP"). The notes from Petitioner's visit on October 26, 2015, indicated that she had an onset of pain after her flu vaccination on October 8, 2015. Ex. 3 at 6. Petitioner informed Dr. Cone that the "[p]ain [felt] like her arm [was] on fire," and that "[n]ow pain has involved [left] upper arm." *Id*. Dr. Cone diagnosed Petitioner with neuritis, normal deep tendon reflexes bilaterally, and prescribed Neurontin 100mg. Ex. 3 at 6.

During Petitioner's November 9, 2015 visit, Dr. Cone noted "pain at injection site [right] arm 10/8/2015" and that she "has had good relief with one tab of 100mg/daily" of Neurontin. Ex. 3 at 5. He instructed her to "[c]ontinue Neurontin…for a full mo[nth] i.e. til Thanksgiving." *Id*.

On November 20, 2015, Dr. Cone referred Petitioner to Dr. Schaeffer for continued injection site pain. Ex. 7 at 10; Ex. 3 at 4.

On December 15, 2015, Petitioner had an appointment with neurologist, Dr. Philip Girard, who noted "[w]eakness and pain in right arm" as the reason for her visit. Ex. 4 at 3. Dr. Girard wrote:

> The patient states that two months ago[] she had a flu shot. A day later, she noticed very severe pain in her right arm extending from the shoulder up to the triceps and distally to the distal forearm, but not into the hand. Along with this pain is numbness in the same distribution and marked weakness of the right arm… She saw her primary care doctor who thought it was brachial neuritis and referred her to a neurologist.

*Id*. Petitioner had "definite weakness in both upper extremities proximally involving biceps, deltoids, and triceps… [and] a patchy decrease in pin sensation mostly distally in the right upper extremity, which did not conform to a specific nerve root or dermatomal distribution." *Id*. Dr. Girard's assessment was "[p]robable autoimmune inflammatory brachial plexitis" and prescribed

Gabapentin 300mg. *Id*. at 4.  He also noted that "[t]here is one aspect of her neurologic examination that does not fit in and that is that she is mildly hyperreflexic in her right arm." *Id*.

An EMG and nerve conduction study of Petitioner's right upper arm the following day showed "[n]ormal sensory and motor conduction studies of the right median, ulnar, and radial nerves" and "[n]ormal EMG of the right upper extremity." Ex. 4 at 6.

Petitioner returned to Dr. Cone on January 15, 2016 to discuss physical therapy as a treatment for brachial neuritis. Ex. 3 at 4.

On January 18, 2016, Petitioner had an MRI with and without contrast of her right brachial plexus, which found "small perineural cysts or pseudomeningocele involving the right T1 and right T2 nerve roots.  No definite evidence of right-sided brachial plexus mass, abnormal enhancement or compression." Ex. 4 at 2. Petitioner had evidence of "[d]egenerative changes of the cervical spine..." *Id*.

On February 17, 2016, Petitioner returned to Dr. Girard for "probable autoimmune inflammatory brachial plexitis." Ex. 4 at 1.  Petitioner "could not tolerate the gabapentin" because it "made her too sleepy, so she stopped taking it." *Id*.  She explained to Dr. Girard that she "still has the pain, but it is a little better" and that "the pain is mostly present when she tries to sleep at night. It does not bother her much during the daytime." *Id*.  Petitioner's MRI "showed no evidence of any significant pathology." *Id*.  Dr. Girard's assessment was "probable autoimmune brachial plexitis, slowly resolving." *Id*.  He ordered an MRI of Petitioner's cervical spine "to make sure [it was] not radicular pathology rather than brachial plexus pathology." *Id*.  Dr. Girard also told Petitioner "to restart the [G]abapentin" at night. *Id*.

On February 22, 2016, Petitioner started physical therapy ("PT") at Missoula Bone and Joint. Ex. 8 at 14.  She was to complete six to eight weeks of PT, two times per week. *Id*. Petitioner complained of "[bilateral] shoulder and arms [sic] pain and weakness" that began "10/8/15 after a flu shot." *Id*.  Her "primary complaint [was] the weakness she [was] experiencing in her BIL UEs L>R." *Id*.  Petitioner's records show that she completed a total of two PT sessions for her arm: 2/22/16 and 2/26/16. *Id*. at 14, 17.  On March 4, 2016, Petitioner's cervical spine MRI showed degenerative changes. Ex. 5 at 29.

On March 16, 2016, Petitioner was hospitalized after falling over a cord onto her right side and was "unable to get up because of right hip pain." Ex. 5 at 45; Ex. 8 at 19.  She was diagnosed with a right femur fracture and required right hip surgery. Ex. 5 at 69. After her surgery, Petitioner began PT for her hip at Missoula Bone and Joint. Ex. 8 at 19.  She mentioned experiencing low blood pressure, stomach issues, and lightheadedness. Ex. 8 at 30, 32.  The same PT records make no mention of ongoing arm pain, nor did Petitioner continue the PT for her arm. *See* Ex. 8.

Petitioner visited Dr. Jeffrey Knight at Community Physician Group on January 24, 2017 with a complaint of "left arm pain." Ex. 6 at 19.  The record indicates that there was "gradual progression in recurrent or worsening symptoms, but [it] all started 'with flu shot Oct 8, 2015.'" *Id*.  During the exam she was noted as being an "excellent historian." *Id*.  Dr. Knight's diagnosis was "scapular dysfunction [and] left shoulder tendinosis." *Id*. at 21.

## II.      Procedural History

The petition in this case was filed on December 8, 2017[3]. Pet., ECF No. 1.  Petitioner then filed her supporting medical records on December 12, 2017, followed by a statement of completion. Exs. 1-9, 11-14, ECF Nos. 6-7; ECF No. 8.  A corrected Exhibit 10 was filed on December 21, 2017. ECF No. 12.

On September 17, 2018, Respondent filed a status report indicating his intent to defend this case.  ECF No. 20.  Respondent filed his Rule 4(c) Report on November 19, 2018 recommending against compensation. ECF No. 22.  I then directed Petitioner to file a status report within 30 days indicating how she wished to proceed in light of Respondent's Report.  *See* 11/20/18 Non-PDF Scheduling Order.

Petitioner filed a status report on December 19, 2018 indicating that she wished to file an expert report in support of her claim. ECF No. 23.  I gave Petitioner an initial deadline of February 19, 2019 to file an expert report.  *See* 12/20/18 Non-PDF Scheduling Order.  On February 19, 2019, I granted Petitioner's motion for an extension until April 19, 2019 to file her expert report. *See* 2/19/19 Non-PDF Scheduling Order.

Prior to that deadline, on March 20, 2019, Petitioner moved for a decision dismissing her petition citing an inability to prove her claim by preponderant evidence.  ECF No. 25.  I granted Petitioner's motion and dismissed the petition on March 25, 2019. ECF No. 26.  A joint notice to not seek review was filed on March 28, 2019 and judgment entered on March 29, 2019.  ECF Nos. 27-28.

Petitioner filed the instant motion for attorneys' fees and costs on May 9, 2019.  Fees App., ECF No. 30.  On May 23, 2019, Respondent filed his response in opposition. Fees Resp., ECF No. 31.  Petitioner replied on May 30, 2019.  Fees Reply, ECF No. 33.

## III.     Parties' Arguments

### A.      Petitioner's Argument in Support of Reasonable Basis

Petitioner filed her motion for attorneys' fees and costs on May 9, 2019 and her reply to Respondent's opposition on May 30, 2019.  *See* Fees App.; Fees Reply.  Petitioner argues that her claim had a reasonable basis because she alleged an injury diagnosed by her treating neurologist and filed records establishing a shoulder injury with more than six months of residual effects. *Id.*

Petitioner argues that the medical records she filed support a diagnosis of brachial neuritis/plexitis. Fees Reply at 7-8.  She points to her treatment by neurologist Dr. Philip Girard on December 15, 2015 and February 17, 2016 to indicate a diagnosis of "autoimmune inflammatory brachial plexitis." *Id.* at 8 (citing Ex. 4 at 1-4).

---

[3] The petition was initially assigned to Special Master Roth and re-assigned to my docket on June 8, 2018. ECF No. 15.

Petitioner further argues that the medical records she filed indicate residual effects of her injury well beyond six months following her October 8, 2015 vaccination. *Id*. at 8-10. She states that had she completed her six to eight weeks of PT as prescribed by Dr. Girard prior to her fall, her treatment would have been beyond the requisite six-month period. *Id*. Petitioner states that medical records from her January 24, 2017 visit with Dr. Jeffrey Knight, during which she complained of worsening left arm pain, establish additional evidence of sequelae. *Id*. at 9 (citing Ex. 6 at 19-23).

Finally, Petitioner argues that the record, as a whole, establishes an off-table shoulder injury related to vaccine administration ("SIRVA"). *Id*. at 10-11 (citing Exs. 2, 3, 6).

### B.   Respondent's Argument Against Reasonable Basis

Respondent argues that Petitioner's records make clear she did not suffer residual effects of her injury for at least six months. Fees Resp. at 7. Respondent states that Petitioner's second and final arm-related PT session was on February 26, 2016 and that, following her fall, she never again received PT treatment for her arm. *Id*. (citing Ex. 8 at 14-18). Respondent makes no mention of Petitioner's January 2017 doctor visit.

Respondent also argues that Petitioner cannot claim SIRVA because "her alleged plain was experienced in the opposite arm of her injection." *Id*. at 8. Respondent claims that the various tests done for Petitioner's brachial neuritis that came out normal is additional evidence that she lacked reasonable basis. *Id*.

## IV.   Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted. Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

### A.  Good Faith and Reasonable Basis

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs*., No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs*., No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs*., 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs*., No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

Regarding the reasonable basis requirement, it is incumbent upon Petitioner to "affirmatively demonstrate a reasonable basis," which is an objective inquiry. *McKellar v. Sec'y of Health & Human Servs*., 101 Fed. Cl. 297, 305 (2011); *Di Roma*, 1993 WL 496981, at *1. When

determining if a reasonable basis exists, many special masters and judges employ a totality of the circumstances test. The factors to be considered under this test may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-36V, 2018 WL 3032395, at *7 (Fed. Cl. June 4, 2018). This "totality of the circumstances" approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Petitioner's counsel is expected to make a pre-filing inquiry into a claim to ensure that it has a reasonable basis. *See Turner*, 2007 WL 4410030, at *6-7. Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just Petitioner's belief in his claim. *Id.* Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015). The evidence presented must be "sufficient to give the petitioner a reasonable expectation of establishing causation." *Bekiaris v. Sec'y of Health & Human Servs.*, No. 14-750V, 2018 WL 4908000, at *6 (Fed. Cl. Spec. Mstr. Sep. 25, 2018). Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Id.*

The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis because the petitioner could not meet the burden of proof needed to establish reasonable basis." *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014). In rationalizing its decision, the *Chuisano* court highlighted *Austin* as an example of a petition that minimally crossed the required evidentiary threshold. *Id.* at 292, citing *Austin*, 2013 WL 659574, at *8. In that case, the special master found reasonable basis where only a single notation by a medical provider linked the alleged injury to the vaccination. *Austin*, 2013 WL 659574, at *8. Still, the Court in *Chuisano* emphasized the totality of circumstances test, and stated that "[a]n evidentiary standard may serve as an excellent guidepost in fee decisions, but it cannot serve as the bright-line threshold. Such a rigid position is at variance with the flexible structure of the [V]accine [P]rogram." *Chuisano,* 116 Fed. Cl. 276 at 287. While the statute does not define the standard for reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Id.*

## B. Attorneys' Fees and Costs

The Vaccine Act permits reimbursement of "reasonable" attorneys' fees and costs. § 15(e)(1). Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). The Federal Circuit has endorsed the use of the lodestar approach, in which a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court may then make an upward or downward departure from the initial calculation based on other specific findings. *Id.* at 1348. Although not explicitly stated in the statute, attorneys' costs are also subject to a reasonableness requirement. *See Perreira*, 27 Fed. Cl. 29 at 34.

Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1993). However, Special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201. 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993).

## V.   Discussion

### A.  Good Faith

Petitioner is entitled to a presumption of good faith. *See* Grice, 36 Fed. Cl. 114 at 121. Respondent has represented that they do not challenge Petitioner's good faith in this matter. Fees Resp. at 5. Based on my own review of the case, I find that Petitioner acted in good faith in bringing this petition.

### B.  Reasonable Basis

Respondent's objections to reasonable basis in this case rest primarily on two points, namely (1) that Petitioner did not suffer residual effects or sequelae of her injury in excess of six months, and (2) that Petitioner's medical records do not support her claimed injury of brachial neuritis. Fees Resp. at 7-8.

As noted above, the standard for establishing reasonable basis is less than that required to prevail on a vaccine-injury claim. *Chuisano*, 116 Fed. Cl. 276 at 287. However, Petitioner is still required to provide some evidence of a reasonable expectation of establishing causation. *Bekiaris*, 2018 WL 4908000, at *6. For the following reasons, I find that a reasonable basis existed for filing this petition.

#### 1.      Six months of sequelae

Petitioner received her flu vaccination on October 8, 2015. As discussed at length above, Petitioner submitted medical record evidence showing that she sought treatment for her injury less than three weeks after the vaccination and visited her PCP, a neurologist to whom she was referred and a physical therapist. Petitioner also submitted records showing that she visited Dr. Jeffrey Knight on January 24, 2017 where it was noted she was seeking treatment for recurrent and worsening symptoms of left arm pain following her October 2015 vaccination. These records are evidence of sequelae well in excess of six months from the date of her vaccination.

#### 2.      Diagnosis of brachial neuritis

Petitioner's records show that during a visit with Dr. Clancy Cone, her PCP, on October 26, 2015, Petitioner indicated she was experiencing pain in both her right and left (injection-site) shoulders. Dr. Cone's initial impression was neuritis and he prescribed Neurontin to treat her

neuritis.  She returned to her PCP on November 9, 2015 and was instructed to continue the Neurontin for another month.  On November 20, 2015, Dr. Cone referred Petitioner to a neurologist due to continued pain.  The neurologist, Dr. Phillip Girard, diagnosed Petitioner with "probable autoimmune inflammatory brachial plexitis" on December 15, 2015 and prescribed Gabapentin. Ex. 4 at 4.  Petitioner returned to Dr. Cone on January 15, 2016 to discuss treatment options, including physical therapy.  She had an MRI three days later.  On February 17, 2016, Petitioner returned to Dr. Girard for ongoing shoulder pain.  His assessment was "probable autoimmune brachial plexitis, slowly resolving." *Id*. at 1.  Petitioner began PT on February 22, 2016 and had a second session on February 26, 2016.  A few weeks later, on March 16, 2016, Petitioner was hospitalized for a fall resulting in a broken hip.  On January 24, 2016, Petitioner went to Dr. Jeffrey Knight for left arm pain and indicated there was "gradual progression in recurrent or worsening symptoms, but [it] all started 'with flu shot Oct 8, 2015.'" Ex. 6 at 19.  For purposes of a reasonable basis analysis, these records provide some evidence that Petitioner suffered from brachial neuritis.

### 3.    Temporal Association

The medical records in this case clearly reflect a temporal association between the influenza vaccine and Petitioner's left shoulder pain.  Petitioner received her influenza vaccination on October 8, 2015.  She made note of her initial symptoms within 48 hours of her vaccination. *See* Ex. 7 at 1.  She then sought treatment with her PCP on October 26, 2015, less than three weeks later. Ex. 3 at 6.  At the appointment, Petitioner indicated onset of pain following her vaccination. *Id*.  While temporal association alone does not establish reasonable basis,[4] because the medical records show the onset of Petitioner's shoulder pain occurred soon after receiving the influenza vaccine, it is reasonable to consider temporal association as *some* support for her claim.

### 4.    Opinion of Treating Physicians

The notations in the medical records made by Petitioner's treating physicians are also favorable to her on the issue of reasonable basis.  As mentioned above, Petitioner's vaccination is mentioned multiple time in relation to her symptoms.  *See* Ex. 3 at 5 ("pain at injection site [right] arm 10/8/15"); *Id*. at 6 ("onset pain after flu vaccination 10/8/15"); Ex. 6 at 19 ("left arm shoulder…gradual progression in recurrent or worsening symptoms, but [it] all started 'with flu shot Oct 8, 2015'").  With respect to diagnosis, her treating physicians consistently assessed Petitioner with brachial neuritis/plexitis. *See* Ex. 3 at 4, 6; Ex. 4 at 1, 3.  Accordingly, I find that these observations and opinions constitute additional evidence supporting a reasonable basis to file the petition.

The record establishes that: (1) Petitioner received an influenza vaccine, (2) she developed shoulder pain within 48 hours of vaccination, (3) her medical providers mention Petitioner's immunization in relation to her symptoms, (4) she was diagnosed with brachial neuritis, and (5) there is medical record evidence that Petitioner experienced related symptoms in January 2017.

---

[4] *See Chuisano*, 116 Fed. Cl. at 288 ("[r]easonable basis requires presenting more than evidence showing only that the vaccine preceded the onset of the injury for which the petitioner seeks compensation.") (quoting *Chuisano v. Sec'y of Health & Human Servs*., 2011 WL 6234660, at 14 (Fed. Cl. Spec. Mstr. Oct. 25, 2013)).

Because there is some support for Petitioner's claim in the medical records, I conclude that a reasonable basis existed when Petitioner filed her claim on December 8, 2017.

The totality of the evidence outlined above, in combination with the lower standard of proof required for establishing reasonable basis, was sufficient to provide Petitioner with a reasonable basis to file this petition.

## VI.   Awarding Attorney's Fees and Costs

Petitioner requests a total of $24,705.87 in attorneys' fees and costs. Fees App. at 1.

### A.   Reasonable Attorney's Fees

Petitioner requests a total of $21,305.20 in attorneys' fees for three attorneys, two law clerks and a paralegal who contributed to this matter. Fees App. at 1; Fees App. Ex. 2.

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).

#### 1.   Requested and Awarded Hourly Rates

Petitioner requests the following rates for attorneys and paralegals:

| Name | 2017 | 2018 | 2019 |
|---|---|---|---|
| William E. Cochran, Jr. (Partner) | $365 | $377 | $391 |
| Michael G. McLaren (Partner) | $440 | n/a | n/a |
| Chris J. Webb (Associate) | $315 | n/a | n/a |
| Samantha R. Ward (Law Clerk) | $148 | $153 | $156 |
| Carmen Garcia Smith (Law Clerk) | $148 | $153 | n/a |
| Laura Leigh Holdford (Paralegal) | $145 | n/a | n/a |

The requested rates are consistent with what Black McLaren Jones Ryland & Grifee, P.C. ("BMJRG") has previously been awarded.  *See, e.g. Neeley v. Sec'y of Health & Human Servs.,* No. 16-251V, 2017 WL 7510722 (Fed. Cl. Spec. Mstr. Dec. 29, 2017) (SM Gowen); *Miller, et al. v. Sec'y of Health & Human Servs.,* No. 16-898V, 2017 WL 6997291 (Fed. Cl. Spec. Mstr. Dec. 28, 2017) (SM Sanders)*; Pancoast v. Sec'y of Health & Human Servs.,* No. 15-718V, 2016 WL 7574815 (Fed. Cl. Spec. Mstr. Nov. 16, 2016) (SM Corcoran); *I.H. v. Sec'y of Health & Human Servs.,* No. 13-766V, 2016 WL 7666536 (Fed. Cl. Spec. Mstr. Dec. 16, 2016) (CSM Dorsey)*; May v. Sec'y of Health & Human Servs.,* No. 12-712V, 2016 WL 7664474 (Fed. Cl. Spec. Mstr. Dec. 15, 2016) (SM Roth)*; Check v. Sec'y of Health & Human Servs.,* No. 15-169V, 2016 WL 7448791 (Fed. Cl. Spec. Mstr. Nov. 30, 2016) (SM Millman).  These rates are also in line with the OSM Attorneys' Forum Hourly Rate Fee Schedule.[5]  Thus, I find the requested rates to be reasonable.

### 2.  Requested and Awarded Billable Hours

After review of the billing summary, I find that the total hours expended on this petition were reasonable and award them in full. Thus, I award Petitioner the requested amount for fees totaling $21,305.20.

### B.  Reasonable Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs and expenses must also be reasonable. *Perreira*, 27 Fed. Cl. 29, 34 (1992).  Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Human Servs.*, 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). After review of all invoices and supporting documentation, I find the costs incurred in this matter to be reasonable and award them in full. Thus, I award Petitioner the requested amount for costs totaling $3,400.67.

### VII.   Conclusion

Based on the foregoing, I find that Petitioner acted in good faith and had a reasonable basis to file her petition. Accordingly, I hereby **GRANT IN FULL** Petitioner's Motion for Attorneys' Fees and Costs in the amount of **$24,705.87**. The award shall be in the form of a check jointly payable to Petitioner and Black McLaren Jones Ryland & Grifee, P.C.

Any questions regarding this Order may be directed to my law clerk, Ahmed Almudallal, by email at Ahmed_Almudallal@cfc.uscourts.gov.

**IT IS SO ORDERED.**

<u>s/ Katherine E. Oler</u>
Katherine E. Oler
Special Master

---

[5] The fee schedules are published to the United States Court of Federal Claims website and can be found here: https://www.uscfc.uscourts.gov/node/2914.